Tayj.or, Chief-Justice,
 

 delivered the opinion of the Court:
 

 The claim of the Complainants arises on a descent from a maternal half brother, of lands which descended from, his
 
 *422
 
 father, or of lauds descending from the paternal sido : and 'vhethcr their claim be well founded, depends upon the.true construction of the acts of April and October, 1784. The Rcction of the first act, without the proviso, is in tiieso words,
 
 i(
 
 that if any person dying intestate, should, at the
 
 “
 
 time of his or her death, be seised or possessed of, or
 
 “
 
 have any right, title or interest, in or to any estate or
 
 e<
 
 inheritance in lands, or other real estate in fee simple,
 
 “
 
 and without issue, such estate or inhcrtance shall des- “ ccrul to his or her brothers, and for want of brothers, to
 
 s{
 
 his or her sisters, as well those of the half blood as those “ of the whole blood, to be divided among them equally,
 
 “
 
 share and share alike, as tenants in common, and not as “ joint tenants $ and such and every of them shall have, “ hold and enjoy, in their x’espective parts or portions,
 
 “
 
 such estate or inheritance as the intestate died seised or
 
 “
 
 posses,sed of or entitled unto.” Were the case to depend on this enacting clause, the Complainants’ right to the inheritance would be beyond controversy : for the words ex-lond to
 
 every person
 
 dying seised of
 
 any
 
 inheritance, whether acquired by descent or purchase, whether it descended from the paternal or maternal line 5 and embrace both sorts of half blood, as well the maternal as the paternal. The clause must necessarily continue to govern every case that is not withdrawn from its operation by some proviso $ and, therefore, it must direct the descent in
 
 this
 
 case, unless it be prevented by the proviso. The words of the proviso are,
 
 6i
 
 that when the estate shall have descended on
 
 ’e
 
 the part of the father, and the issue to whom such inhe- “ ritance shall have descended, shall die without issue, “ male or female, but leaving brothers or sisters of the
 
 “
 
 paternal side of the half blood, and brothers or sisters of
 
 “
 
 the maternal line, also of the half blood, such brothers
 
 “
 
 and sisters respectively of the paternal line shall inherit, *•' in the same manner as brothers and sisters of the whole
 
 “
 
 blood, until such paternal line is exhausted of the half " Mood: and the same rule of descent and inheritance shall
 
 *423
 

 es
 
 prevail amongst the lialf blood of the maternal line, un-
 
 “
 
 der similar circumstances, to the exclusion of the pater-
 
 íS
 
 nal line.” The proviso then gives a preference to the half blood of the line from which the estate descended, when the competitors for the inheritance are the half blood of that line, and the half blood of the line from which the estate did not descend. But there are no words in it, which are exclusive of the latter half blood, where there is none other in equal degree, and recommended by the reason given for the preference, to claim it from them. On the contrary, the words
 
 “
 
 until such lino is exhausted of “ the half blood,” carry with them a strong implication, that when such an event shall occur, the other line of half blood shall be taken into the inheritance. The word <c -until,” which signifies the same as “ to the time that,” seems to import, that when the half blood of the favoured line gives out, the other half hlood shall inherit. The enacting clause has viewed with undistinguishing regard and favor the half hlood of both
 
 lines;
 
 the proviso has selected a particular case, wherein the preference shall be given to one set: in all other cases, therefore, as well where the reasons of the preference have ceased to operate, as where they have never existed, the other set of half blood must be entitled.
 

 A man having issue, and having also brothers and sisters of the half blood on the father’s side, and,brothers and sisters of the half blood on the mother’s side, for peculiar reasons, thinks proper to devise his estate to all his brothers and sisters, as well the half blood on one side a$ on the other, hut annexes a condition to the devise, that the paternal half hlood shall enjoy the estate, until that line be exhausted: Of the
 
 intention
 
 of the testator in such a case, it does not seem possible to doubt. The legality of tbe devise is another question.
 

 The other proviso is, “ that if any brother or sister of “ the intestate shall have died in the life time of the intes- “ tate, leaving issue, male or female, such issue shall re-
 
 *424
 
 “ present their deceased parent, and stand in tlic samo “ place, he or sise would have done, if living.” There io nothing in this proviso, which can hare any tendency to impair the right of the
 
 Complainants;
 
 the only object of it being to provide for collateral descents as far as brothers’ and sisters’ children.
 

 The proviso of the 2d section had made provision for lineal descendants as far as grand children $ and in order to complete the system, the words of the 4th section arc, " that the same rules of descent shall be observed in lineal “ descendants and collaterals respectively, whore the lineal iS descendants shall he further removed from their ancestor
 
 iS
 
 than grandchildren, and where the collaterals shall bo
 
 “
 
 further removed than the children of brothers and sis- “ tors.” What is meant by “ the same rules of descent ?” Clearly the rules established by the preceding sections, one of which is, that where there are two sets of half blood, the set of that line from which the estate descended, shall be preferred to the line from which it did not descend : Consequently, uncles and aunts, great uncles and great aunts, &c. of the line from which the estate descended, shall exclude uncles and aunts, great uncles and great aunts, &c. of the line from which it did not descend. In other words, where those who claim the inheritance are in equal degree, or represent those who were, the acquiring line, shall be prcfciTcd. Where the claimants are not in equal degree, the proximity of degree shall decide the right to the inheritance. This appears to the Court to he the true interpretation of these sections of the act of 1784, and to arise naturally from the words, as well as being consonant to the views of the Legislature, and to the spirit in which the act was framed. To exclude the maternal half blood for the sake of a remote collateral, or to suffer the land to escheat rather than permit the half blood to inherit, docs not seem to accord with the sentiment expressed in the preamble to the 3d section: “ And whereas it is almost “ peculiar to the law of Great Britain, and founded in
 
 *425
 
 44 principles of the feudal system, which no longer apply 44 in that government, and never can in this state, that the 44 half blood should be excluded from the inheritance, 6a;.”
 

 It is true, that the law of England gives a preference to the male
 
 stock;
 
 and there is a partial recognition of the same principle, in the 7th section of the act of April, 1704,’ amended by the act of October, 1704 j which provides, 44 that in case of the death of any person intestate, leaving* 44 any real estate actually purchased or otherwise acquired,1 44 and not having* any heirs of his body, nor any brother 44 or sister, or the lawful issue of such, then such estate 44 shall bo vested in the father of the intestate, if living, 44 but if dead, then in the mother for life, then in the heirs 44 of such intestate on the part of the father, and for want 44 of heirs on the part of the father, then in the heirs of the 44 intestate on the part of the mother forever.”
 

 It is to be observed on this section, that the father is called in, only upon the son’s dying* without lineal heirs, and without brothers or sisters, or the issue of such. The preference of the male stock has been confined strictly to the cases enumerated in the 7th section, and its amendment, to-wit, to cases of estates purchased by the intestate. And on this point, the decisions have been uniform, allowing* the half blood to inherit, when the land was purchased, and giving them the preference to the father and tiio male, stock.
 

 A section inserted for the purpose of giving a preference, to the male line, amended to prevent that preference from being* interrupted by the accident of death, is yet so restricted in its terms, and so modified by judicial exposition, admitted to be just, that the favoured stock is called to the inheritance only after the failure of issue in the intestate, and the failure of brothers and sisters of every description, maternal as well as paternal half blood. It appears to the Court, that every reason for thus confining* and limiting* the preference of the male line under this clause, applies with increased strength to prove, that the preference ought
 
 *426
 
 to be strictly confined under tlie third section, to the half blood of the acquiring line : that they, and they only, shall exclude the half blood of the non-acquiring line. A con-gjs|en| mcaning will he thus given to the Sd clause, to the proviso, and its extension by the
 
 4th
 
 section, which would then read, “ Where any person shall die intestate, without
 
 iS
 
 issue, and without brother or sister, or the issue of such,
 
 “
 
 leaving uncles or aunts of the line from which the estate descended, and uncles or aunts of the line from which •e the estate did not descend, the former uncles or aunts
 
 u
 
 shall exclude the latter.”
 

 There is also a declaration in the 3d section of the act of October, 1784, « That the paternal line is favoured in
 
 “
 
 all other instances,” and it proceeds to guard against the estate being transferred to the maternal line, by the death of the father before the mother of the intestate, which would have happened in consequence of the phraseology of the 7th section. It is apprehended that tins declaration relates only to the instances in which the paternal line is favoured in the 7th section j to-wit, that in purchased estates, it shall ascend to the father, if living, but if he be dead, and the mother likewise, that it shall descend to the paternal heirs, and continue in that line as long as there are any heirs. So that it is favoured in all cases of purchased estates, except where the father be dead and the mother bo alive : in which case, the heritable line was diverted from the paternal. When the Legislature were about to remedy this only case in which the paternal line was not favoured in the 7th section, with respect to purchased estates, it was natural to advert to the other cases where it ivas favoured ,• and in relation to tisis provision, it was favoured
 
 “
 
 in all other instances.” In no other sense can the declaration be considered correct ; for no preference, is given to it in any other part of the act, except in entitling males before females, it is not preferí ed in descents ,• it is not preferred where the estate descends from the maternal line
 
 ;
 
 it cannot be preferred by force of
 
 *427
 
 the scrcnlli canon of descents, for that plainly comes within the purview of tbe 7th section, and the amendatory law, and, as such, is repealed and made void.”
 

 The sixth canon of descents, excluding the half blood, was unquestionably repealed by the third section of the act of April, 1784, for the same reason : from which time the half blood became entitled. In October, 1784, the Legislature say,
 
 “
 
 that doubts have been entertained whe-
 
 “
 
 ther brothers of the half blood shall be entitled to sue-
 
 e<
 
 cccd to the inheritance in the same ¡nanne- as .sisters do,
 
 “
 
 where there is no brother, nor the issue of any such and they proceed to declare that it was their intention, in the third section of the act of April, 1784, to let in bi-others of the half blood, equally with brothers of the whole blood, &c. This act was passed from abundant caution, and to guard against a construction in opposition to the declared will of the Legislature, and one which it is believed would not be recognized by a Court of Justice j since the rule of law is, that relation shall be bad to the last antecedent, unless it obstruct the sense. The preamble to the third section expresses the intention to admit the half
 
 blood;
 
 and the construction of tbe words, unless much refined upon, conveys that intention. The Legislature say that doubts have been suggested: to prevent them in future, they declare what their original intention was, and change the language of the third section.
 

 So far as the Legislature have declared a preference for the line of the purchasing ancestor, or the male stock, the Court is bound to execute their
 
 will;
 
 but it does not feel bound by any considerations of expediency or justice to preserve a preference, where it is not clearly to be collected from the law. The principles are peculiar to the laws of England, and others derived from the feudal sys - tem, and were unknown to the enlightened republics of antiquity. The system is purely artificial, and, in some respects, repugnant to our notions of justice and the obis - gations of duty. So far as natural reason suggests any
 
 *428
 
 thing on the subject, a law regulating the descent
 
 of,
 
 estates should be founded on the presumed will of the de-
 
 ceasc<l>
 
 ar|d regulate the succession in such a manner as he, probably, would have done, under the united dictates of duty and inclination. The strongest affection is between parents and' children; and the next, the love between brethren, arising from their relation to the same common stock, heightened by youthful association, and the likeness of years and education.
 

 The last owner of an estate is as completely so as any former one; and it is quite as reasonable to consult his' presumed inclination as that of a remote ancestor. It is not probable that he would prefer a distant collateral, because of the male stock, to his maternal brothers ; nor is it certain that duty would require him to do it, because the remote relation was of the acquiring blood. The law-relative to the distribution of personal property has excluded all these principles, and its justice is generally approved.
 

 For these reasons it is the unanimous opinion of the Court that the demurrer be overruled and the bill sustained.
 
 *
 

 *
 

 Taylor, Hall, and Murphey, (who sat for Judge Henderson,) composed the Court. Judge Henderson had been of counsel in this case, and gave no opinion in relation to the judgment. His opinion had formerly been adverse to the claim of the half blood; but, after the judgment was rendered in this case, he declared that, upon mature consideration, his opinion had changed, and that he concurred in thinking the half blood were entitled.